UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS JACK GOODMAN,<br><br>            Plaintiff,<br><br>    v.<br><br>REYES, *et al.*,<br><br>            Defendants. | Case No. 1:24-cv-00051-EPG (PC)<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER<br><br>(ECF Nos. 1, 7, 11).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Travis Jack Goodman is proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 5). Plaintiff alleges that, while confined at the Kern County Sheriff's Lerdo Justice Facility, Kern County Sheriff Donny Youngblood and Kern County Deputy Reyes created a threat to his safety based on Reyes asking whether Plaintiff was a child molester.

On March 1, 2024, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 7). The Court gave Plaintiff thirty days to file an amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 8). And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.*).

Plaintiff later moved for an extension to respond to the screening order, which the Court granted on March 20, 2024, requiring Plaintiff to respond by no later than May 13, 2024. (ECF Nos. 10, 11). Notably, the Court again warned Plaintiff that his failure to respond to the screening order "may result in the dismissal of this case." (ECF No. 11).

On May 2, 2024, Plaintiff filed a notice of change of address; and on May 16, 2024, the Kern County Sheriff's Office filed a notice stating that Plaintiff was released from custody on April 24, 2024.[1] (ECF No. 12). However, the May 13 deadline has passed, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons below, the Court will recommend that Plaintiff's case be dismissed for failure to state a claim, failure to prosecute, and failure to comply with a court order.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915, which requires a court to dismiss a case at any time if the case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient

---

[1] Neither the Court's screening order nor its order extending the time for Plaintiff to respond to the screening order have been returned as undeliverable.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff states that around December 26, 2022, he was incarcerated at the Lerdo Justice Facility and was house on an upper bunk.[2] However, Plaintiff had a chrono from medical staff stating that he should be housed on a lower bunk on a lower tier because of his history of epilepsy. Plaintiff spoke to a deputy about this issue, with the deputy bringing Plaintiff into the unit office to speak with him and a second deputy.[3] The deputies left the door open while they spoke with Plaintiff.

After speaking among themselves, the deputies called Deputy Reyes, using the speaker phone on the institutional phone. As these two deputies were speaking with Reyes, a third deputy, who was escorting "two skin-head gang members," stopped outside the unit office to presumably speak with the two deputies. The third deputy made the two inmates stand against the wall right outside the door of the unit office.

During the time the two inmates were outside the open door of the unit office, the two deputies asked Reyes, "Do you have a lower bunk on the lower-tier open, because I have an individual who has a history of seizures.?" Reyes "was not aware that he was on speakerphone and that [Plaintiff] and everyone else could [hear] him." He asked, "Is he a child molester?"

---

[2] For readability, minor alterations, such as altering capitalization, have been made to some of Plaintiff's quotes without indicating each change.
[3] None of the deputies mentioned in this order, aside from Reyes, are a defendant in this case.

The two deputies responded, "That was out of line and not professional, you cannot be profiling inmates, all PCs are not child molesters and sex offenders, and no he is not a child molester."

However, the two inmates overheard Reyes over the speakerphone and began acting hostile, with one of them looking Plaintiff in the eyes and stating, "So it's like that T.J.," which is what people who know Plaintiff call him. Plaintiff realized that he knew both inmates.

As a result of this incident, the two inmates showed up at Plaintiff's house and harassed his wife. And after Plaintiff was released from custody, they physically assaulted him, stabbing him during one incident. Every time they accosted him, they said, "the cops said you were a child molester," thus giving Plaintiff's family and neighbors the impression that he was a child molester.

Plaintiff seeks $5.6 million in monetary damages and for Reyes to be terminated as a peace officer.

**III.    ANALYSIS OF PLAINTIFF'S COMPLAINT**

**A.  Section 1983**

The Civil Rights Act under which this case was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the

4

Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.  Failure to Protect

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Id.* at 834.

"Deliberate indifference has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citation and internal quotation marks omitted). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw

1 the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows
2 that inmates face a substantial risk of serious harm and disregards that risk by failing to take
3 reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at
4 847).

5 Courts have extended the failure-to-protect line of caselaw to cases where prison
6 officials intentionally label an inmate in such a way as to subject him to violence at the hands
7 of his fellow inmates. For example, the Ninth Circuit has found an Eighth Amendment claim
8 where an inmate alleged that prison officials "labeled him a 'snitch' with the intent of having
9 [him] killed by inmates." *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).
10 The same holds true with labeling an inmate a sex offender or "child molester." *Morris v.*
11 *Burrkhouse*, No. CV 19-5839-SVW (KK), 2021 WL 2119497, at *4 (C.D. Cal. Mar. 24, 2021)
12 ("The allegations that Defendants, for the purpose of being malicious and vindictive and
13 identifying Plaintiff to the prison population as a sex offender, falsely accused Plaintiff of a
14 violation which they knew would result in dangerous consequences are sufficient to establish
15 Defendants acted with deliberate indifference to Plaintiff's safety."); *Crane v. Gonzales*, No.
16 CV F 03 6339 OWW WMW P, 2008 WL 2168927, at *3 (E.D. Cal. May 23, 2008), *report and*
17 *recommendation adopted*, 2008 WL 2676780 (E.D. Cal. June 30, 2008) (finding cognizable
18 Eight Amendment claim where prison official labeled an inmate a child molester and incited
19 inmates to harm him).

20 With these standards in mind, the Court concludes that Plaintiff fails to state a claim.
21 First, as to Sheriff Youngblood, Plaintiff offers no factual allegations that link him in any way
22 to the underlying incident. Notably, it was Deputy Reyes who asked if Plaintiff was a child
23 molester. Plaintiff does not explain how Youngblood was involved in this incident. To the
24 extent that Plaintiff wants to hold Youngblood liable as a supervisor, supervisory personnel are
25 not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*
26 and, therefore, when a named defendant holds a supervisory position, the causal link between
27 the supervisory defendant and the claimed constitutional violation must be specifically alleged.
28 *Iqbal*, 556 U.S. at 676-77. To state a claim for relief under § 1983 based on a theory of

supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted). Here, Plaintiff alleges none of these circumstances.

Turning to Deputy Reyes, while Plaintiff does allege that Reyes made a statement that put Plaintiff at risk of serious harm, Plaintiff's allegations do not establish that Reyes knew of that risk and disregarded that risk by making his comment. Even according to Plaintiff's complaint, Reyes "was not aware that he was on speakerphone," and did not know that everyone else could hear him when he asked whether Plaintiff was a child molester. Accordingly, this is not a situation where Reyes intentionally told other inmates that Plaintiff was a child molester. Further, there is nothing to indicate that Reyes knew that inmates were outside the door. There are also no allegations that Reyes even knew who Plaintiff was, let alone that he had an animus against Plaintiff and wanted to incite violence against him. Moreover, Reyes only asked whether Plaintiff was a child molester and was quickly told by the other deputies that Plaintiff was not a child molester.

In short, Plaintiff's complaint fails to state a constitutional claim based on Reyes' statement because the facts alleged, even if true, would not show that Reyes deliberately intended to label him a child molester in front of other inmates for the purpose of harming him. *See Farmer*, 511 U.S. at 835 (noting "that deliberate indifference entails something more than mere negligence").

### IV.     FAILURE TO PROSECUTE AND COMPLY WITH A COURT ORDER

The Court will likewise recommend dismissal based on Plaintiff's failure to prosecute this case and to comply with a court order.

In determining whether to dismiss a[n] [action] for failure to prosecute or failure

to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Accordingly, this first factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants. . . ." *Id.* Despite being given an extension of time, Plaintiff has failed to respond to the Court's screening order. This failure to respond and prosecute is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite twice being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's *in forma pauperis* status, it appears that monetary sanctions are of little use. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this factor weighs

against dismissal. *Id.*

After weighing the factors, the Court finds that dismissal is appropriate.

## V. CONCLUSION AND ORDER

Based on the forgoing, IT IS ORDERED that the Clerk of Court shall assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

1. This action be dismissed for failure to state a claim, failure to prosecute, and failure to comply with a court order; and

2. The assigned District Judge dismiss Plaintiff's § 1983 claims with prejudice.

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __June 14, 2024__              /s/ Erica P. Grosjean
                                                  UNITED STATES MAGISTRATE JUDGE

9